v. Williams, 22-1224. Ms. Kelman, now's your chance. I'm not sure if it's a good thing or a bad thing that you recognized it wasn't me. Good morning, Your Honors. May it please the Court. Susan Kelman on behalf of Ronald Williams. Your Honors, I believe that at the heart of this case is really a definition or an understanding of what the parameters are for Rule 106, the rule of completeness. And the rule of completeness, the touchstones of the rule, I would say, provide necessary context for the statements, fairness and impartiality, in order to avoid misleading a jury. And in the cases that have been discussed in the briefs, what's clear to me is that when you have two statements, one of which is precluded and one of which is not, the question is whether or not the jury is misled by the dichotomy. Here, the preclusion of Mr. Williams' post-arrest statement, that particular section, provides particular context for the full statement. Without it, the jury would be misled and, in my view, was misled. There is a misimpression that's created by the omission of the second part of this statement by Mr. Williams. Well, why is that? The omitted part was just what Campbell said to him. Those were, you know, he talked about, you know, who and where and how much. And then the second part is what Williams himself was thinking about that, which there seems to be a line in the fine line. Well, but I think that's exactly the point, Your Honor. The test here, the question that this jury had to answer, was what was Williams' intent? The government introduced the first part of the statement to show what Campbell's intent was. But Campbell wasn't on trial. Campbell had been severed. What was on trial was Williams, who was on trial, and it was Williams' intent that mattered. So if you sever out the part that helps to contextualize his state of mind and his intention, then you really create a misrepresentation of the facts to the jury. It's very different from, for example, the government, and of course it would have to be Williams as well. So perhaps we'll call the government's most recent letter Williams 2, since the defendant here, the appellant here is Williams. But in the case that the government wrote to the court about on Friday, I believe, the issue that came up there is you have two independent statements. You have an individual who's saying, I didn't do it, I didn't do it, I didn't do it. And what the court precludes is, and that is precluded as being falsely exculpatory. What the court admits is the part that he says, all right, you got me, I did it. It was my girlfriend's gun, it was mine. Assuming this is an error, why isn't it harmless? Well, it's not harmless because if the jury was misled, they may well have had a different verdict. And that certainly is- No, in terms of just the portion of the statement that the judge excluded. If that portion was included? No, no. If, let's say the judge, you're correct, and the judge should have admitted it, made an error. Why wasn't that error harmless? Because I think that- You had the tapes, you had other evidence. Well, Judge, with respect to the tapes, the tapes, in our view, make it clear what Mr. Williams' intention was, which was not a shared intention with Mr. Campbell, which was to kill this individual. And the tapes make, there's a series of conversations that last approximately, I think it was 4 minutes and 20 seconds. And they're one after another after another. And in each call, Campbell is getting more and more excited about the notion of Mr. Williams killing this person. And he says, but call me back, it's important, call me back. And Mr. Williams doesn't call him back. Then he calls again, a half a minute later, and he says, call me back. And he doesn't call him back, which is showing, indicating Mr. Williams' intention, which is not a shared intention, to murder this individual. And by taking out this particular portion, you're taking away from the jury its ability to consider what, in fact, was Mr. Williams' state of mind and what his intention was. And his intention was, from the get-go, and if you hear the tapes, the tapes make it clear that he's not interested. And these are individuals who share a long-term relationship. They've known each other for a lifetime. And it's clear from the conversations that Mr. Williams is not taking Mr. Campbell very seriously. Obviously, that's something this court can't hear because you don't hear those recordings. But Mr. Campbell is somebody who suffers from mental illness. He's somebody who the, and I think that the impression that you get from these conversations is that Mr. Williams has very little, if any, interest in what is really happening. And the reason that we know that is because he never asks who the victim is. He tells Mr. Campbell that he's, oh, he can't call back this guy, Cuddy, who he says, oh, Cuddy, go do it. We don't even know if there is a Cuddy. We don't hear anything from Cuddy. And he says, I can't call Cuddy back now. You know, Cuddy's already gone to take care of this, to go murder the guy. We don't know who the guy is. He has yet to identify who the individual is. He says a brown guy from 95th Street. Well, that limits it. What do you mean by you need to know, well, what's missing? I mean, there is a description, a location. Well, Your Honor, by my calculation, and we cited this in our brief, there are approximately 116,000 people in Brownsville, New York, that fit the description of a small brown guy. So, which one of those 116,000- So, Your Honor, does it need to be a name, a social security number, or something like that? What level of detail do you need to- How about a name? A name. I mean, who do you want me to kill? And I think that contributes to the notion that he had no intention of killing anybody. He intended to rip this guy off. He intended to rob him. He intended to steal $5,000. And it's not every day that the portion that's excluded is as inculpatory as this statement is. In other words, there's an argument at some level that, you know, this should be precluded because of the hearsay violation. Clearly, it's not a hearsay violation because this is a statement against Mr. Williams' interest. He is saying to the police, I intended to rob this guy. He's admitting to a violent felony. But he doesn't know who the individual is. If you don't know who you're supposed to go out there and kill for money, how are you going to send somebody to go do it? And you intended to rob somebody without knowing their name? Yes, but you have to know who the per- But not her. But he knows who this individual is. He plans to- That's the point. I mean, he does know- No, no. He knows who Mr. Campbell is. He intends to rob Mr. Campbell. He doesn't know who the reported victim is. So the victim could be imaginary? Is that your- Well, the victim- I don't know that the victim is imaginary, but the person who goes to kill the person is imaginary because he doesn't know who he's going to kill. I feel very frustrated that I'm not communicating this effectively. But the reality is, at the end of the day, you can't say I'm- Sure. I mean, I'm sorry you're frustrated. To me, the name seems somewhat irrelevant if you know- He knows that there is a description, repeatedly, location and at home. And why do you need to know a name? Your Honor, this is not apartment 4C at 236 Rutland Road. This is a neighborhood. He says, yeah, a brown guy on 95th Street. And then he gives him another description. He says, well, it's the guy, you know, who a year ago gave me food in a jail. He wasn't in- My client wasn't in jail. I mean, he doesn't know who that person is. I mean, without a way to find out who the person actually is, how do you send someone out to kill them? You have to have somebody. He's not going to just kill any brown person in Brownsville. He has no idea. He hasn't been told who the person is. And you can tell about the level of seriousness because within that same four minutes where my client is not returning his calls, Mr. Campbell says, you know what? Forget about it. So he's not even being serious about it. The only thing that was serious about this was my client. I hate to say this about him, but it was my client's intention to rob Mr. Campbell of $5,000. That seems to be the crux of this. And- Were all these arguments made to the jury? I'm sorry, Your Honor? Were these arguments made? They were, Your Honor. I'd like to say they weren't, but they were. But there also, Your Honor, is a finding by the court in agreement with the government that there had to be other conversations that aren't recorded. And in my view, we don't have any evidence of that. I mean, other than the judge's perception that there must have been, the government's perception that there must have been. But there's nothing like that in evidence. Without some evidence, even the judge felt it was short, obviously too short for her to be able to make a decision about it. But the reality is you can't assume that the district court and the government should not have assumed that there had been other conversations that made it clear who the person was. Because we have no evidence of that. I hope that's answered Your Honor's question. Thank you very much. You've reserved two minutes for rebuttal. We'll hear from the government. Mr. Mehta. Thank you, Your Honor. Good morning. May it please the court. Hirold Mehta, Defendants of America. The focus today on the appellant side has been on the point two of the brief, which is whether or not the district court abused its discretion in precluding a portion of the post-arrest statement by the defendant, Mr. Williams. The government's view is that the decision was not arbitrary and irrational or manifestly erroneous and therefore should be upheld. Would you address the last, at least for my part, the last couple of questions about, I guess it's a two-fold issue. First, what evidence was there that Mr. Williams could have identified the reported victim? That Mr. Campbell had wanted killed? And second, does it matter that if there's no evidence of that, does it matter? Sure. On the first point, it's fairly clear that for a conspiracy, two people have to agree to commit a crime. And the crime here was to kill, the instruction was to kill John Doe because they didn't have a name. Now I know it's Everton Leslie. The context here is a series of calls and events that happened in late April of 2013. On April 26, 2013, Leona Campbell goes to Everton Leslie's house to sell him marijuana. As he comes out, he makes federal agents who are actually keeping surveillance on the house. He believes that now Leslie is cooperating against him. And he gets in his car and there's a car chase that happens. All right, that helps us understand that Mr. Campbell. Yes. I'm going to answer, Your Honor. Okay. There's a car chase. At the end of the car chase, Mr. Campbell calls Mr. Williams, the defendant. Tells him about the car chase. Tells him the feds are after him and he's concerned. Williams says, I know, I saw you. I was behind you in the car chase. I agree with you. It's the feds. The feds are after you. And then a few days later, four days later, April 30th, Campbell references what happened at the beginning of the call. He says, you remember that little thing that went on the other day? The little man? The informant? Leslie? I want to give $5,000 to someone to kill him. And Williams goes, yes, let's do it. And he literally puts the phone to sign and turns to someone in the room and says, hey, where is Cudman? Get him for me now. And Cudman, we know from previous calls on the wire, is an individual who Williams works with. Because at one point in a call he says, Cudman has the gun, the knockers that gave him for the job. It's a real person on the wires. And the jury heard that. So as soon as he gets a call from his buddy, Leon Campbell, who, you know, there's other calls about them planning a robbery of a truck of drugs and so forth. He puts a plan into action. And then he starts asking questions to figure out, okay, who's the person we're trying to kill? Do I know him? And Campbell, he's a little man. He's over by your side. He lives in your neighborhood. Because, as the jury also heard, Williams lives on 96th Street between Rutland and Winthrop. And Leslie lives on 95th Street between Rutland and Winthrop. They literally live a less than 30-second walk from each other. And so he's telling him, he lives by your side. And he goes, where is he now? He's at the Island Grill. But after he's done drinking, he's coming over to where you are. And then this time, Williams says, where is he coming? 95th. He goes, Winthrop Clarkson? That's the other cross street. No, no, no. Rutland, Campbell says. So Williams is trying to figure out, where is this guy now? Where is he going? I've called someone to do this. And then Williams says to Campbell, do you got a car? Because the hitman tells me he needs a car. Campbell goes, no, I don't have a car. He says, well, you know what, I have rental. He can use my rental. These are two people planning a murder, not a robbery. If they're planning a robbery because the jury, of course, heard their argument and rejected, he'd be saying to Campbell, so the $5,000, you got that in cash now? Can you bring it over today? Can you bring it over right now? Can I come over to you and get it from you? No. He's not focused on the money at all. Later in the conversation, after they figure out the location, where is he going to be? Do you want the hitman to wait around on 9th and Rutland, where he gets over there? Williams says to him, a couple things, Leon. I need more information, because he does. And two, you may have to pay a little bit more money than $5,000. Again, because the other guy, the hitman needs more money than this. It's a transcript. It's 1103, 1113. It's a jury heard it. It heard the calls. So it's clear. Is the upshot of this that Williams' statement about his intent to rob is implausible? Absolutely. That's a homeless error analysis on the issue of whether it was admitted or whether it mattered. But even on the abuse of discretion issue, it has the arbitrary rational. The judge is very clear. If you look at the admitted statement, it's only about what Campbell's conduct and intent. And also, I heard Ms. Kelman say it's not relevant. Well, first of all, the question isn't about here. We're not here before you on whether the admission is relevant. It's absolutely relevant. It's a conspiracy. Campbell's intent, of course, matters. They both have to intend to commit the crime for the conspiracy. So, absolutely, Campbell's intent matters. That's relevant, absolutely. But that's not the question here. The question is, is the admitted statement misleading as to the admitted statement? The answer is no. Because, as Judge Hall said, if the admitted statement was, hey, I'll give you $5,000 to kill this guy, and Williams said, yes, I will do the crime, then, potentially, the admitted statement would have been admitted. Because then it's about Williams' intent. But that statement's not in the admitted statement. It's just, this guy called me. He offered me money to kill someone. Done. That's it. That only implicates Mr. Campbell. It's only about Mr. Campbell. And so it has nothing to do with, then Williams has the law enforcement officer, oh, by the way, I wasn't going to do it. I wasn't going to rob him. Nothing to do with his intent. And that's the distinction the district court made. It's why it's not an abuse of discretion. You know, on the issue of the evidence, whether no rational juror could have found the intent here, 12 rational jurors did find that. And I think the calls are very clear. That's the whole question. Of course. Of course you're on it. Of course you're on it. I don't mean to be flip. But, you know, the point being is that these arguments were made before the district court. They were made before the jury. They were rejected. And on the standard that we're looking at here, that no rational juror could have found this, I think it's false. If I have any questions, I'm happy to answer them. Thank you very much. Yeah, I don't, I'm troubled by the district court's rationale in excluding this statement. It seems to me, as I read it, and I'm talking, this patois is not my native language. Yes. It took me a little while. It's not my internet. There is a translation. Yeah, I could have benefited with a translation. But that, putting that aside, it seems to me that the omitted portion is directly relevant to the portion the judge let in. And I think its absence misled the jury by giving a false impression that Williams confessed that he had agreed to Campbell's scheme to murder the guy. Well, I think, so I'll address that question, Your Honor, first. And also, are you harmless error here for Your Honor as well? We can spin it or not. Sure. I mean, this is the issue. The issue at the heart of this is, you know, is this information that should have gotten to a jury to, you know, assess the rest of the government's case? Yes, Your Honor. I think the question before the court is, under Rule 106, does the omitted statement render the admitted statement misleading? That's the law. The answer, respectively, is no, because I'll tell you why, Your Honor. The omitted statement is the following. Leon Campbell called me and offered me $5,000 to kill someone he believed was a federal informant and gave me his location. That's the omitted statement. There is nothing in that statement about Williams agreeing to that offer to join the conspiracy. There's nothing in that admitted statement about that. The omitted statement is Williams says to law enforcement, I never intended to do anything. I was going to rob him. That's all about what Williams is thinking. It's what's in his head. It's nothing to do with Leon Campbell. The two statements are completely distinct from that point, and that's what the district court found. And on an abuse of discretion standard, respectfully, the district court says it is not arbitrary and irrational. It's reasoned. Now, another district court may disagree, but that's the point of the abuse of discretion standard, to allow district court enough discretion to make those decisions. And so, respectfully, on that point, it's not an arbitrary and irrational decision. And then, even if the court found it, which the court should do, it's harmless error. The calls make clear. Williams is not trying to rob Leon Campbell. He's trying to plan a murder. There's no emphasis on the money whatsoever. They're talking about logistics, location, rental car. Where is he going to be? How much money is going to be left over afterwards? And he has a side where he tries to get Cudman on the phone. Again, all of this is argument made to the jury. This is all play acting. But two days prior to that, on April 28th, Leon Campbell called Williams to rob a truck full of drugs. And, again, Williams put the plan into motion. He called someone right away to get someone to commit the robbery. That person wasn't around. They called back 20 minutes later, and Williams said, sorry, it's too late. The truck of drugs is gone. Leon Campbell knows, and the jury knows, that Williams, the defendant, is someone you call when you're in trouble or you want to commit a crime. When Leon Campbell calls Williams after the car chase, Williams is the one that tells Campbell, hey, dust that car down. Get the fingerprints off. So the jury heard that as well. So the context of this is there's no way in the view of the government that this argument that he was just going to rob him would have any salience as to overturn the verdicts on that count. Thank you very much. Thank you, Your Honor.  Thank you, Your Honor. You know, the government raises an interesting point, which is this other robbery attempt. And, again, Mr. Williams is the one who says, you know, never mind, it's too late. And I think that that underscores the position that we've taken, which is that Williams is not taking his conversations with Campbell very seriously. I think that the notion that there must have been other conversations by the district court, that statement alone, it makes it clear that the district court recognizes that there's something missing. And what's missing is who the victim is. If you listen to the government's argument, the government is saying that the minute two people say, let's kill a guy, they've committed a crime that carries a life sentence. Yeah, I agree, let's kill a guy. We don't know who he is. We know he lives on some block in Brooklyn. But we have no idea who he is, but let's kill him. That's it, you get a life sentence. You don't have to do anything more. That's crazy. That's just crazy talk. I mean, you have- I don't know if that's crazy, because, I mean, you say a whole block, but it's maybe a little bit more specific than that. He lives a block away in Brooklyn from Mr. Leslie. At least that's what he's told. And there's 25 apartment buildings on that block. So which one of those apartment buildings does he live in, and who is he? Who among the 20 buildings and 10 floors, which one is the person he's supposed to kill? Is he just supposed to blow up the building? When was he arrested? At what point? He's arrested, I wish I could tell you exactly, Your Honor. Was it soon after this call? I apologize, Your Honor, I haven't focused on it. I believe that Mr. Campbell was arrested first, and then- In other words, so my question is directed at the following. Does law enforcement, whether at the federal or local level, have to wait until a victim is identified if they overhear conversations about a kidnapping, say, we're going to kidnap this person, and he's on 96th Street between Rutland and Winthrop, and give me the money, I've got a guy looking out for him, we can't find him, we don't know what he looks like. Do they have to wait, or is there enough to say at that point that there's a conspiracy to kill somebody? Is the law that there's got to be a conspiracy to kill a particular person, or just somebody who's in the process of being identified? I think that the answer is twofold. One, I think there has to be an identifiable victim. They don't have to wait until the person gets killed. So, is there a case on point on that? Well, I think that the case on point, Judge, here is really what the court has to figure out is, and what the jury was asked to figure out, is do they share an intent? And if they don't share this intent, then you can't have a conviction. To kill Leslie. It's just that one person is trying to figure out who Leslie is. The other person is trying to help him identify Leslie. Right, but he doesn't identify him. And at the end of the day, what William says is, I mean, yeah, what William says is, I can't, after Campbell says, forget about it, don't even bother, forget about it. William says, and this goes to his intent as well. William says, I can't, it's too late, I already sent the guy out. How did he send the guy out? He still doesn't know who he's killing. He's trying to rip him off. This is all in front of the jury, of course. Yes, Your Honor. Thank you very much. Thank you. Thank you. Thank you.